DOUGLAS COUNTY SCHOOL DISTRICT 0001, ALSO KNOWN AS OMAHA PUBLIC SCHOOLS, ET AL., APPELLEES, V. MICHAEL O. JOHANNS, IN HIS OFFICIAL CAPACITY AS GOVERNOR OF THE STATE OF NEBRASKA, ET AL., APPELLEES, AND LANCASTER COUNTY SCHOOL DISTRICT 0001, ALSO KNOWN AS LINCOLN PUBLIC SCHOOLS, ET AL., APPELLANTS.

694 N.W.2d 668

Filed April 15, 2005. No. S-04-874.

James B. Gessford, Gregory H. Perry, and Joshua J. Schauer, of Perry, Guthery, Haase & Gessford, P.C., L.L.O., for appellants Lancaster County School District 0001 et al.

David M. Pedersen, Jill Robb Ackerman, Elizabeth Eynon-Kokrda, and Kenneth W. Hartman, of Baird, Holm, McEachen, Pedersen, Hamann & Strasheim, L.L.P., for appellees Douglas County School District 0001 et al.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.

CONNOLLY, J.

Lancaster County School District 0001, also known as Lincoln Public Schools, and other parties (collectively LPS) appeal a

district court's order that denied it the right to intervene. In the underlying action, Douglas County School District 0001, also known as Omaha Public Schools, and other parties (collectively OPS) challenged the constitutionality of the state school funding statutes. In arguing it has a right to intervene, LPS contends that it has a direct legal interest in the action because if the school funding system is enjoined, it may lose funding. We determine that (1) the parens patriae doctrine prevents LPS' intervening as defendants because its interest is adequately represented by the State and (2) LPS cannot intervene as plaintiffs because its interest is speculative. Because we determine that LPS is not entitled to intervene as a matter of right, we affirm.

## BACKGROUND

OPS filed this action against Michael O. Johanns, in his official capacity as Governor, and other public officers (collectively the State). It seeks a declaratory judgment that the Nebraska statutory school funding system is unconstitutional under special legislation and the equal protection and due process clauses of the Nebraska Constitution. The lengthy operative complaint sought to enjoin the State from further implementing the funding system and an award of attorney fees.

The allegations in the complaint focused on the school funding system's failure to provide the resources necessary to adequately educate students in ethnically and economically diverse settings of Douglas County School District 0001. The school district alleged that it is the largest in Nebraska, that its student body is economically diverse, and that it has the largest racially and ethnically diverse student body in Nebraska. The allegations included statistics that set out the number of students in programs such as students who qualify for free lunches, the percentage of students for whom English is their second language, and the number of students in special education. The school district alleged that federal mandates required it to meet standards to educate these students, and it provided detailed allegations of those standards. The complaint alleged that the school district's students failed in meeting academic standards and that it could not properly educate the students without additional funding. The complaint sets out the details of the funding system. It alleged that the

State was on notice of the school district's student body characteristics, that the school funding system failed to provide the students with the opportunity to obtain the free education guaranteed to them under the Nebraska Constitution, and that the funding system denied them an equal opportunity to meet legally set academic standards.

OPS' complaint further alleged that the school funding system was unconstitutional on its face and as applied. It asked the court to declare the funding system void and to enjoin the State from further executing or implementing the system.

LPS moved to intervene as both defendants and plaintiffs. Lancaster County School District 0001 alleged that it is the second largest school district in Nebraska, that its students share many of the characteristics of Douglas County School District 0001, and that it is required to comply with the same academic standards. In the complaint, the school district alleged nothing about the specific number of economically, racially, or ethnically diverse students it serves, or how it could or could not meet the students' needs. LPS alleged that it sought to intervene as defendants so it could resist the claim that the funding system was unconstitutional. It also sought to intervene as plaintiffs, stating:

> [LPS] allege[s] in support thereof that in the event relief is afforded [to OPS, it is] joining [OPS] in claiming what is sought by the Complaint, or by uniting with the [State] in resisting the claim of [OPS], or by demanding anything adversely to both [OPS and the State].
>
> . . . .
>
> [I]n the event Nebraska's school funding system or the state aid formula is held to be unconstitutional or otherwise unlawful . . . the causation of such must be determined, and that to the extent Nebraska's school funding system or the state aid formula is determined to be the cause, that [LPS joins OPS] in claiming what is sought by the Complaint . . . .

LPS further alleges that it "will be subject to harm from any loss of funding and such loss of funding will cause the funding system or the state aid formula to be unconstitutional or otherwise unlawful as to [LPS]."

The State did not object to the motion to intervene. OPS moved to dismiss or strike the complaint in intervention. The district court found that (1) LPS failed to allege facts showing that it had a direct and immediate interest in the action; (2) if the funding system were declared unconstitutional, LPS could participate in the legislative process when the Legislature acted to restructure the system; and (3) even if LPS had a direct interest, because the State, as defendants, consisted of public officers engaged in litigation to protect public rights, no private person was entitled to intervene. The court overruled the motion to intervene and dismissed the intervention complaint. LPS appeals.

## ASSIGNMENTS OF ERROR

LPS assigns, rephrased, that the district court erred by denying its motion to intervene, dismissing its complaint, and failing to find that it was a necessary party.

## STANDARD OF REVIEW

 Whether a party has the right to intervene in a proceeding is a question of law. *In re Change of Name of Davenport*, 263 Neb. 614, 641 N.W.2d 379 (2002). The presence of necessary parties to a suit is a jurisdictional matter and cannot be waived by the parties; it is the duty of the plaintiff to join all persons who have or claim any interest which could be affected by the judgment. *Spear T Ranch v. Knaub, ante* p. 177, 691 N.W.2d 116 (2005). A jurisdictional question which does not involve a factual dispute is a matter of law. *Webb v. American Employers Group*, 268 Neb. 473, 684 N.W.2d 33 (2004).

 When reviewing questions of law, an appellate court has an obligation to resolve the questions independently of the conclusion reached by the trial court. *Dworak v. Farmers Ins. Exch., ante* p. 386, 693 N.W.2d 522 (2005).

## ANALYSIS

LPS contends that it has a direct legal interest in the action and therefore a right to intervene. OPS argues, however, that the State is adequately defending the constitutionality of the school funding system and that LPS has failed to plead a direct legal interest in the matter.

Intervention in Nebraska is controlled by statute, which provides:

> Any person who has or claims an interest in the matter in litigation, in the success of either of the parties to an action, or against both, in any action pending or to be brought in any of the courts of the State of Nebraska, may become a party to an action between any other persons or corporations, either by joining the plaintiff in claiming what is sought by the complaint, or by uniting with the defendants in resisting the claim of the plaintiff, or by demanding anything adversely to both the plaintiff and defendant, either before or after issue has been joined in the action, and before the trial commences.

Neb. Rev. Stat. § 25-328 (Cum. Supp. 2004).

## LPS Has Failed to Show Right
### to Intervene as Defendants

In its chameleon-like pleading, LPS alleges that it has a direct legal interest in defending the constitutionality of the school funding statutes and that if the funding statutes are unconstitutional, it seeks the same relief that OPS might receive. In seeking to intervene as defendants, it argues that the OPS action could enjoin school funding and harm LPS. OPS, however, argues that the State is adequately representing any LPS interest regarding the statutes' constitutionality.

We have long held that " ' "[w]hen public officers are engaged in litigation to protect public rights, and their pleadings and procedure maintain the public interest, no private person is entitled to intervene." ' " *Best & Co., Inc. v. City of Omaha,* 149 Neb. 868, 877, 33 N.W.2d 150, 156 (1948). Accord *Smithberger v. Banning,* 130 Neb. 354, 265 N.W. 10 (1936). We have applied the same principle as other jurisdictions which routinely hold that under the parens patriae doctrine, when a state is a party to a suit involving a matter of sovereign interest, it is presumed to represent the interests of all its citizens. See, e.g., *Maine v. Director, U.S. Fish and Wildlife Service,* 262 F.3d 13 (1st Cir. 2001); *United States v. Hooker Chemicals & Plastics,* 749 F.2d 968 (2d Cir. 1984); *Commonwealth of Pa. v. Rizzo,* 530 F.2d 501 (3d Cir. 1976); *New Mexico Right to Choose/NARAL v. Johnson,* 126

N.M. 788, 975 P.2d 841 (1998). See, also, *Wade v. Goldschmidt*, 673 F.2d 182 (7th Cir. 1982) (discussing presumption in dicta). The concept of parens patriae refers to when "a governmental entity presents itself as a trustee, guardian, or representative of all citizens." 6 James Wm. Moore, Moore's Federal Practice § 24.03[4][a] at 24-49 (3d ed. 2004). Discussing the parens patriae doctrine, the U.S. Supreme Court has explained:

> The *"parens patriae"* doctrine . . . is a recognition of the principle that the state, when a party to a suit involving a matter of sovereign interest, "must be deemed to represent all its citizens." . . . The principle is a necessary recognition of sovereign dignity, as well as a working rule for good judicial administration. Otherwise, a state might be judicially impeached on matters of policy by its own subjects, and there would be no practical limitation on the number of citizens, as such, who would be entitled to be made parties.

*New Jersey v. New York*, 345 U.S. 369, 372-73, 73 S. Ct. 689, 97 L. Ed. 1081 (1953), quoting *Kentucky v. Indiana*, 281 U.S. 163, 50 S. Ct. 275, 74 L. Ed. 784 (1930).

 To overcome the presumption that the government is adequately representing all of its citizens, the applicant must show that its interest is different from the state's interest and that the state will fail to represent the applicant's interest. See, e.g., *Hooker Chemicals & Plastics, supra*. In addition, a difference in tactics does not create inadequate representation. *Director, U.S. Fish and Wildlife Service, supra*; *Chiglo v. City of Preston*, 104 F.3d 185 (8th Cir. 1997); *New Mexico Right to Choose/NARAL, supra*. Courts generally hold that state representation is adequate if (1) no collusion is shown between the representative and an opposing party, (2) the represented interest is not adverse to the proposed intervenor, and (3) the representative has been diligently prosecuting the litigation. See, e.g., *Delaware Valley Citizens' Council v. Com. of Pa.*, 674 F.2d 970 (3d Cir. 1982); *Wade, supra*. The presumption applies equally to individual citizens and political subdivisions. *Hooker Chemicals & Plastics, supra*.

In applying the parens patriae doctrine, courts have held that in cases where a party sought to intervene as defendants to defend the constitutionality of a statute, the state adequately represented the applicant's interests and denied intervention as a matter of

right. *Horton v. Meskill*, 187 Conn. 187, 445 A.2d 579 (1982). See, *New Mexico Right to Choose/NARAL, supra; Ass'n of Rural and Small Schools v. Casey*, 531 Pa. 439, 613 A.2d 1198 (1992).

LPS argues that we overruled the parens patriae doctrine in *Ruzicka v. Ruzicka*, 262 Neb. 824, 635 N.W.2d 528 (2001). We disagree. In *Ruzicka*, we stated in dicta that under § 25-328, a party who is adequately represented by another party may intervene. But *Ruzicka* did not involve a governmental party and thus did not involve the parens patriae doctrine. *Ruzicka* did not overrule our previous cases applying the doctrine.

Here, LPS seeks first to intervene as defendants to defend the constitutionality of the school funding system. So, LPS' position is identical to that of the State, and we presume under the parens patriae doctrine that the State adequately represents that interest. LPS has not alleged that the State has failed to perform its duties in defending the litigation, nor has it alleged any malfeasance or collusion. Therefore, LPS has failed to allege facts showing that it may intervene as defendants. The district court correctly denied intervention.

### LPS HAS FAILED TO SHOW RIGHT TO INTERVENE AS PLAINTIFFS

If it cannot intervene as defendants, LPS argues that it should be allowed to intervene as plaintiffs if the school funding system is declared unconstitutional. It argues that it will lose funding if the statutes are unconstitutional and that it has a direct interest in the action. OPS, however, argues that LPS did not properly plead a direct legal interest and that any interest LPS has is speculative.

The intervention statutes are to be liberally construed. *In re Change of Name of Davenport*, 263 Neb. 614, 641 N.W.2d 379 (2002). But the interest required as a prerequisite to intervention under § 25-328 is a direct and legal interest—an interest of such character that the intervenor will lose or gain by the direct operation and legal effect of the judgment which may be rendered in the action. *In re Interest of Destiny S.*, 263 Neb. 255, 639 N.W.2d 400 (2002); *Ruzicka, supra*. An indirect, remote, or conjectural interest in the result of a suit is not enough to establish intervention as a matter of right. *In re Change of Name of Davenport, supra*. Therefore, a person seeking to intervene must

allege facts showing that he or she possesses the requisite legal interest in the subject matter of the action. *Id.*; *Ruzicka, supra.* We have defined an "interest in the matter in litigation" as "the subject matter of the action, 'the thing in controversy.' " *Kirchner v. Gast*, 169 Neb. 404, 411, 413, 100 N.W.2d 65, 72, 73 (1959).

The Maryland Court of Appeals considered a similar case in which a school district sought to intervene as a plaintiff. See *Montgomery County v. Bradford*, 345 Md. 175, 691 A.2d 1281 (1997). In *Bradford*, the plaintiff sought a declaratory judgment that students in Baltimore were deprived of their right to at least a minimum quality of education required in the state constitution. Montgomery County sought to intervene, contending in a detailed petition that if the funding statutes were found unconstitutional, it would result in a diminution of resources to other districts in the state, including Montgomery County. Montgomery County argued that it had a strong interest in the lawsuit and that it had a fundamental interest to participate in defining the constitutional parameters of an adequate education in Maryland that would not harm Montgomery County. The plaintiffs opposed intervention, arguing that Montgomery County did not have a direct legal interest in the litigation. The trial court denied intervention, finding that whether the Montgomery County students were receiving an appropriate education was not an issue in the suit and that any future loss of funds was speculative.

Montgomery County appealed, presenting the same primary arguments as LPS: (1) that it had an interest in preserving state funding and (2) that should the funding scheme be found unconstitutional, it had an interest in the remedies that the court might fashion. The Maryland Court of Appeals affirmed. The court determined that Montgomery County's concerns were speculative because they were premised on future events that might not occur and that any decreased funding would not automatically follow. The court stated:

> [T]he County's concerns are indirect, remote, and speculative; they do not focus directly on the "transaction" involved in these cases, viz, whether the plaintiffs' actions, directed, as they are, *solely* to the constitutional adequacy of the education provided to children in the Baltimore City public schools, implicates Montgomery County's legal interest in

any way which would give it a right to intervene in these cases under [the state intervention rule]. Were it otherwise, according to the plaintiffs, and that was all that was needed to establish a right to intervene, then any applicants' generalized interest in participating in the formulation of a constitutional standard, to which the person may be subjected, could intervene as a party from which an interpretation of a constitutional provision might emerge.

*Id.* at 199, 691 A.2d at 1293.

Likewise, the Connecticut Supreme Court denied intervention as a matter of right in a similar case. *Horton v. Meskill*, 187 Conn. 187, 445 A.2d 579 (1982). Discussing whether the intervenors had a direct interest when the action concerned students in a different district, the court noted that a person or political subdivision does not have a sufficient interest to create a right to intervene merely because an impending judgment might have some effect on the intervenor. *Id.*

Here, without providing individualized details, LPS pled only the following allegations of a direct legal interest:

[I]n the event Nebraska's school funding system or the state aid formula is held to be unconstitutional or otherwise unlawful . . . the causation of such must be determined, and that to the extent Nebraska's school funding system or the state aid formula is determined to be the cause, that Intervenors . . . join [OPS] in claiming what is sought by the Complaint . . . .

[LPS] will be subject to harm from any loss of funding and such loss of funding will cause the funding system or the state aid formula to be unconstitutional or otherwise unlawful as to [LPS].

Like *Montgomery County v. Bradford*, 345 Md. 175, 691 A.2d 1281 (1997), and *Horton, supra*, we hold that this speculative allegation is insufficient to state a direct legal right that would allow intervention. LPS has not alleged details to show how it would lose funding, or how much. Further, whether any funding would be lost is speculative because it is dependent on a ruling finding the funding scheme unconstitutional.

Moreover, actions by the State that would act to decrease funding—actions such as legislative redrafting or budgeting—would

fall outside of the trial court's control. For example, as the trial court has already noted, if it enjoined operation of the school funding statutes, it could not dictate to the state Legislature how and in what amount it should fund the schools. Instead, the court could find only that the current system was unconstitutional. The Legislature would then be required to resolve the issue through different budgeting, redrafting of statutes, and tax increases or by applying other unknown solutions. LPS would be free to participate in that process, which is outside of judicial control. Accordingly, we determine that the interest LPS alleges is indirect, remote, and conjectural and thus is not enough to establish intervention as a matter of right.

### LPS AS NECESSARY PARTY

LPS contends that it is a necessary party to the action. Neb. Rev. Stat. § 25-323 (Cum. Supp. 2004) provides in part:

> The court may determine any controversy between parties before it when it can be done without prejudice to the rights of others or by saving their rights; but when a determination of the controversy cannot be had without the presence of other parties, the court must order them to be brought in.

We have determined that LPS does not have a direct legal interest. The court can determine the action without LPS' presence. Accordingly, we determine that LPS is not a necessary party to the suit.

### CONCLUSION

We determine that LPS was not entitled to intervene as a matter of right and that the parens patriae doctrine applies. We further determine that LPS is not a necessary party to the action. Accordingly, we affirm.

AFFIRMED.