JOHN S. MAGISTRO, APPELLANT, v. J. LOU, INC., A NEBRASKA CORPORATION, AND GREGORY J. NOLAN, APPELLEES.

703 N.W.2d 887

Filed September 30, 2005.   No. S-04-138.

Norman Denenberg for appellant.

Cletus W. Blakeman, of Blakeman Law, P.C., L.L.O., for appellees.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.

WRIGHT, J.

## NATURE OF CASE

John S. Magistro filed this action against Gregory J. Nolan and his corporation, J. Lou, Inc. (collectively referred to as "Nolan"), alleging breach of contract; violation of the Uniform Deceptive Trade Practices Act, Neb. Rev. Stat. §§ 87-301 to 87-306 (Reissue 1999); and violation of the Trade Secrets Act, Neb. Rev. Stat. §§ 87-501 to 87-507 (Reissue 1999). Magistro sought an injunction, liquidated damages, and attorney fees. The Douglas County District Court dismissed Magistro's petition and Nolan's counterclaim. Magistro appeals.

## SCOPE OF REVIEW

■ A suit for damages arising from breach of a contract presents an action at law. *Par 3, Inc. v. Livingston,* 268 Neb. 636, 686 N.W.2d 369 (2004).

■ In a bench trial of a law action, the trial court's factual findings have the effect of a jury verdict and will not be disturbed on appeal unless clearly wrong. *Id.*

■ When reviewing questions of law, an appellate court has an obligation to resolve the questions independently of the conclusion reached by the trial court. *Douglas Cty. Sch. Dist. 0001 v. Johanns,* 269 Neb. 664, 694 N.W.2d 668 (2005).

## FACTS

When this action was commenced, Magistro had been in the pizza restaurant business for more than 25 years and he had owned and operated a Don Carmelo's Pizzeria in Omaha, Nebraska, for 8 years. He owns the trade name "Don Carmelo's Pizzeria," which is registered with the U.S. Patent and Trademark Office.

On February 4, 1994, Magistro and Nolan entered into a contract under which Nolan was to operate a Don Carmelo's Pizzeria at 117th and Blondo Streets in Omaha (the Blondo Street restaurant). In return for $50,000, it was agreed that Nolan could use Magistro's information, methods, trade name, and trade secrets. The trade secrets, which Magistro's petition defined as "an entire

array of information starting with the ingredients that go into the Don Carmelo's pizza, strombli [sic], calzone and other Italian dishes," were to be used only in the operation of the Blondo Street restaurant and any subsequent Don Carmelo's Pizzeria licensed by Magistro. Magistro claimed that after licensing the Blondo Street restaurant, he spent months instructing Nolan as to the proper methods to prepare the menu items.

Magistro and Nolan entered into a second contract in 1995 for a Don Carmelo's Pizzeria at 76th and Dodge Streets in Omaha (the Dodge Street restaurant). Nolan agreed to pay royalties equal to 5 percent of the gross sales for this restaurant. In April 1996, Nolan changed the name of the Dodge Street restaurant to "Giavonni Santino's Pizzeria" and ceased paying royalties to Magistro. Nolan later began licensing restaurants using the name "Giavonni Santino's Pizzeria."

Magistro sued Nolan, alleging that Nolan's failure to pay royalties was a breach of contract. Magistro also claimed that Nolan had entered into a course of advertising to make it appear that Don Carmelo's Pizzeria and Giavonni Santino's Pizzeria were "essentially the same business" and that these deceptive trade practices were intended to confuse customers as to the relationship between the two restaurants. Magistro sought, inter alia, an accounting of royalties due while Nolan operated the Dodge Street restaurant; liquidated damages of $200,000, as called for by the contracts; an injunction against further violation of the Uniform Deceptive Trade Practices Act and the Trade Secrets Act; and attorney fees.

The trial court concluded that Magistro had failed to prove his claims and that Nolan's counterclaim had no merit. On November 18, 2003, the court entered an order dismissing Magistro's amended petition and Nolan's counterclaim. Magistro filed a motion for new trial, which was overruled.

## ASSIGNMENTS OF ERROR

Magistro's assignments of error may be summarized and restated as follows: The trial court erred (1) in failing to find a breach of contract and a trade secret violation, (2) in failing to award liquidated damages, and (3) in failing to find deceptive trade practices.

## ANALYSIS

The first question to be addressed is whether Nolan breached the contracts with Magistro by using trade secrets obtained from Magistro in the operation of Nolan's restaurants. A suit for damages arising from breach of a contract presents an action at law. *Par 3, Inc. v. Livingston*, 268 Neb. 636, 686 N.W.2d 369 (2004).

In his petition, Magistro claimed that his family recipes were trade secrets and that Nolan breached the contracts with him by continuing to use those recipes after Nolan changed the name of the Dodge Street restaurant from "Don Carmelo's Pizzeria" to "Giavonni Santino's Pizzeria" and stopped paying royalties to Magistro. Nolan asserted that the recipes used in Giavonni Santino's Pizzerias were different from those he received from Magistro. Nolan claimed that he did not breach the terms of the contracts and that the agreements were terminated in April 1996.

We first examine the contracts to determine the rights and obligations of the parties and then examine the evidence to determine whether the trial court erred in dismissing Magistro's action against Nolan.

The February 4, 1994, contract stated that Magistro owned the trade name "Don Carmelo's Pizzeria" and that he possessed trade secrets, including the manner in which ingredients were assembled and prepared for storage and baking. The contract provided that Nolan would pay $25,000 for a license agreement and $25,000 for services rendered. In return, Nolan could use the trade name Don Carmelo's Pizzeria and the methods and trade secrets obtained from Magistro.

Pursuant to the contract, Nolan promised to guard the recipes and methods as trade secrets and warranted that in the event the trade secrets became known to any other person, intentionally, negligently, or otherwise, he would be liable for liquidated damages of $100,000. Nolan agreed that the trade secrets would be used only in the operation of any "Don Carmelo's Pizzeria" licensed by Magistro. The contract granted Nolan a nonexclusive nontransferable license to use the trade name Don Carmelo's Pizzeria in connection with the Blondo Street restaurant. Magistro agreed to provide the recipes and methods to be used in connection with the operation of the business.

A second contract, dated June 29, 1995, stated that Nolan was granted license to use the trade name Don Carmelo's Pizzeria and to use Magistro's trade secrets in operating the Dodge Street restaurant. Nolan agreed to pay Magistro royalties equal to 5 percent of the restaurant's gross sales. The license was exclusive to Nolan within a geographic area bounded by 90th, 60th, Fort, and Center Streets in Omaha.

This contract also provided that the recipes and methods possessed by Magistro were trade secrets that would be used only in the operation of the Dodge Street restaurant and any subsequent Don Carmelo's Pizzeria licensed by Magistro. Nolan promised to guard the trade secrets and agreed to be liable for liquidated damages if the trade secrets became known to other persons. The agreement contained a provision concerning liquidated damages that was substantially similar to the one found in the February 1994 contract.

■ The definition of a "trade secret" is a question of law. *Home Pride Foods v. Johnson*, 262 Neb. 701, 634 N.W.2d 774 (2001). When reviewing questions of law, an appellate court has an obligation to resolve the question independently of the conclusion reached by the trial court. *Douglas Cty. Sch. Dist. 0001 v. Johanns*, 269 Neb. 664, 694 N.W.2d 668 (2005).

Under § 87-502(4) of Nebraska's Trade Secrets Act, a trade secret is defined as

> information, including, but not limited to, a drawing, formula, pattern, compilation, program, device, method, technique, code, or process that:
>
> (a) Derives independent economic value, actual or potential, from not being known to, and not being ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use; and
>
> (b) Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

Magistro testified that the dough recipe used in Don Carmelo's Pizzerias was a recipe that his family created in Sicily before the family moved to the United States. When his father opened a pizza restaurant in New Jersey, only family members were privy to the recipes. Magistro moved to Omaha in 1980 and opened his first pizzeria. Magistro said he protected the family

recipes by putting the ingredients into packets that were sealed and refrigerated until needed. An employee would then add water to make the sauce and the dough.

Magistro's brother Carman Magistro testified that only members of his family created and prepared the recipes and that no one outside the family knew the recipes. Carman claimed that Don Carmelo's pizza was superior because the dough and sauce recipes were his father's personal recipes.

We conclude that the recipes Nolan acquired from Magistro were trade secrets. The recipes derived independent economic value from not being known to other persons, and Magistro and his family made reasonable efforts under the circumstances to maintain their secrecy. The trial court correctly determined that the recipes were trade secrets.

The issue, however, is not whether the recipes provided by Magistro were trade secrets but whether Nolan used the trade secrets in violation of the contracts. This presents a question of fact. In a bench trial, we review the findings of fact by the trial court and will not disturb such findings unless they are clearly wrong. See *Par 3, Inc. v. Livingston*, 268 Neb. 636, 686 N.W.2d 369 (2004).

The trial court noted that there were two agreements, but it declined to determine whether there were any breaches of the February 1994 contract concerning the Blondo Street restaurant. The court found that any moneys that were due and owing under the terms of that contract had been paid by Nolan. It was unable to determine whether any actions occurred while the business was operated as a Don Carmelo's Pizzeria that would give rise to another claim under this contract.

As to the June 1995 contract regarding the Dodge Street restaurant, the trial court found that the term of the contract was not stated and that the agreement did not contain a provision regarding termination. It concluded that the contract could be terminated "just by changing the name and starting to do business under another name" and that as long as Magistro's trade secrets were not used, there would be no violation of the contract.

The trial court stated, "[T]here's no way to show, in my opinion, that . . . Nolan is still using the same recipes." Although the recipes furnished by Magistro for the dough, sauce, and

meatballs were trade secrets, the evidence supported Nolan's contention that he no longer used those recipes. The court stated that it could not find by the greater weight of the evidence that Nolan was using the trade secrets in his business or the restaurants that he had franchised.

We agree with the trial court that Magistro failed to show that Nolan was still using Magistro's trade secrets. Magistro testified to his knowledge concerning the operation of a pizza restaurant and the secret family recipes. Magistro was not able to testify that he personally knew Nolan was still using the recipes in his new restaurants, nor did the evidence support that contention.

Nolan testified that when he opened the Blondo Street restaurant, Magistro provided him with a dough recipe, a sauce recipe, and a meatball recipe and that no other recipe-related information was given to him. After the Dodge Street restaurant opened in the spring of 1995, Nolan paid royalties to Magistro on that restaurant until April 1996. The restaurant was subsequently relocated to Cass Street, and the names of both restaurants were changed to Giavonni Santino's Pizzeria.

Nolan testified that the name change occurred only after Magistro had terminated the contracts by demanding that Nolan cease using the Don Carmelo's Pizzeria trade name, trade secrets, and recipes. Nolan stated that he understood this request to mean that "our contract was over and [Magistro] was going to go ahead and license somebody else in that zone."

Nolan also testified that upon attending a pizza convention in early 1996, he discovered that there were recipes for "anything you wanted: [p]izza sauce, pizza dough" and that the convention included demonstrations "to teach you how to do all of this type of thing." He said he then realized that "there were no secrets" because the people at the convention were willing to share information. He stated that he was given a recipe for thin crust New York-style pizza which produced the same type of crust that Magistro claimed was a family secret. Nolan said that when he returned from the convention, he began using the recipe in his restaurants. He testified that he no longer prepared his own meatballs and that they were being purchased commercially, already rolled and precooked. He also changed the sauces by using prepackaged spice mixes to ensure consistency. He stated

that these mixtures were different from the recipes provided by Magistro.

There was no evidence that Nolan was still using the trade secrets furnished to him by Magistro. Thus, the trial court's finding that Magistro failed to prove that Nolan was using Magistro's trade secrets in violation of the contracts was not clearly wrong.

We next address Magistro's claim that Nolan engaged in an advertising campaign with the intent to deceive customers, in violation of the Uniform Deceptive Trade Practices Act. We will not disturb the factual findings of the trial court unless we find them to be clearly wrong. See *Par 3, Inc. v. Livingston*, 268 Neb. 636, 686 N.W.2d 369 (2004).

Magistro claimed that several advertisements could confuse customers or mislead them into believing that Don Carmelo's Pizzeria and Giavonni Santino's Pizzeria were operated by the same parties. Magistro's evidence consisted of photocopies of the yellow pages from a telephone directory. One page listed Don Carmelo's Pizzeria and Giavonni Santino's Pizzeria at the same Blondo Street address and the same telephone number. Magistro claimed that Nolan tried to associate his restaurants with Magistro by calling them "family owned & operated."

The Uniform Deceptive Trade Practices Act provides in relevant part:

> (a) A person likely to be damaged by a deceptive trade practice of another may be granted an injunction against it under the principles of equity and on terms that the court considers reasonable. Proof of monetary damage, loss of profits, or intent to deceive is not required. Relief granted for the copying of an article shall be limited to the prevention of confusion or misunderstanding as to source.

§ 87-303. A person engages in a deceptive trade practice when, in the course of his business, vocation, or occupation, he: "(2) Causes likelihood of confusion or of misunderstanding as to the source, sponsorship, approval, or certification of goods or services; (3) Causes likelihood of confusion or of misunderstanding as to affiliation, connection, or association with, or certification by, another." § 87-302.

The trial court found no basis upon which it could rule in Magistro's favor on the issue of deceptive trade practices. We cannot say that the trial court was clearly wrong.

## CONCLUSION

For the reasons set forth herein, we affirm the judgment of the district court.

AFFIRMED.