NELSON MERZ, APPELLEE, AND DOUGLAS E. MERZ, APPELLANT, V. JOHN SEEBA, APPELLEE.

710 N.W.2d 91

Filed March 3, 2006.    No. S-04-1129.

J.L. Spray and Reginald S. Kuhn, of Mattson, Ricketts, Davies, Stewart & Calkins, for appellant.

John M. Guthery and Shawn P. Dontigney, of Perry, Guthery, Haase & Gessford, P.C., L.L.O., for appellee John Seeba.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.

CONNOLLY, J.

Douglas E. Merz (Douglas) appeals the district court's order denying his motion to intervene and motion for a new trial. In

2004, Douglas sought to intervene in an action filed in 1990. The district court dismissed the intervention action for two reasons: (1) It was not properly revived and (2) equitable principles prevented intervention. Because the 10-year delay in seeking intervention was unreasonable, we affirm.

## BACKGROUND

Nelson Merz (Nelson) filed this action in 1990 against John Seeba seeking an accounting and divestment of stock. Merz held shares in Salem Grain Company, Inc. (Salem), and Seeba was an officer and director of the corporation. According to Nelson's fourth amended petition, Seeba diverted shares and corporate opportunities to himself, harming the other stockholders. The crux of the allegations focused on Seeba's alleged purchase of shares of Salem stock from a bank when the bank had initially offered to sell the stock to Salem. The action remained on the docket for several years, with the court allowing amendments to the petition. The record includes multiple occasions where the court ordered Nelson to show cause why the action should not be dismissed. In 1994, the court ordered that the action be dismissed unless Nelson showed cause within 45 days. The record shows that Nelson did not respond. A docket notation shows that the action was dismissed in 1995, but there is no formal order of dismissal.

Nelson died in 1996, and his estate was closed in 1997. In 2004, Douglas filed a petition in intervention alleging that he was a shareholder in Salem, seeking the same remedies that Nelson sought. The district court denied the intervention. The court first determined that a formal dismissal had never been filed. The court then determined that the case had become dormant and had not been revived within the allowable statutory time, terminating the action. In the alternative, the court denied intervention on equitable principles. The court overruled Douglas' motion for a new trial, and he appeals.

## ASSIGNMENT OF ERROR

Douglas assigns, rephrased and consolidated, that the district court erred by applying the revivor statutes and equity powers to deny his request to intervene.

## STANDARD OF REVIEW

Whether a party has the right to intervene in a proceeding is a question of law. *Douglas Cty. Sch. Dist. 0001 v. Johanns*, 269 Neb. 664, 694 N.W.2d 668 (2005). When reviewing questions of law, an appellate court has an obligation to resolve the questions independently of the conclusion reached by the trial court. *Id.*

## ANALYSIS

Douglas contends that he can intervene as a matter of right because the action was never dismissed and the motion was filed before trial. Because the intervention statute presents intervention as one of "right," he argues that equitable doctrines such as laches cannot apply to prevent intervention. See Neb. Rev. Stat. § 25-328 (Cum. Supp. 2004).

Section 25-328 provides:

> Any person who has or claims an interest in the matter in litigation, in the success of either of the parties to an action, or against both, in any action pending or to be brought in any of the courts of the State of Nebraska, may become a party to an action between any other persons or corporations, either by joining the plaintiff in claiming what is sought by the complaint, or by uniting with the defendants in resisting the claim of the plaintiff, or by demanding anything adversely to both the plaintiff and defendant, either before or after issue has been joined in the action, and before the trial commences.

Nebraska procedure requires that a complaint be filed to intervene. Intervention is governed by the same rules as other pleadings. Neb. Rev. Stat. § 25-330 (Cum. Supp. 2004).

We have previously applied equitable principles to § 25-328 under different circumstances. For example, we have long recognized that when it would be in the interests of justice for a party to intervene after trial has commenced, rules of equity will allow intervention. See *State ex rel. City of Grand Island v. Tillman*, 174 Neb. 23, 115 N.W.2d 796 (1962). In cases involving intervention after trial has commenced, we have stated that a right to intervene should be asserted within a reasonable time. *Lincoln Bonding & Ins. Co. v. Barrett*, 179 Neb. 367, 138

N.W.2d 462 (1965). A party seeking to intervene must be diligent and not guilty of unreasonable delay after knowledge of the suit. *Id.* As a result, parties who would otherwise be granted leave to intervene are denied consideration where they sit by and allow litigation to proceed without seasonably requesting leave to enter the case. *Id.*

Although we recognize that equity may allow intervention after trial has commenced, we have not addressed whether it can deny intervention when trial has not begun but an unreasonable delay occurs. Courts in other jurisdictions, however, have allowed use of equitable principles to deny intervention when a statutory provision would otherwise apply. *In re Yokohama Specie Bank,* 86 Cal. App. 2d 545, 195 P.2d 555 (1948); *Amer States Ins Co v Albin,* 118 Mich. App. 201, 324 N.W.2d 574 (1982).

In *In re Yokohama Specie Bank,* the California Court of Appeal affirmed an order denying intervention. The court discussed the effect of equitable principles on a statutory "right" of intervention. The court noted that the California statute stated that a person "may" intervene with leave of the court. The court held that the statute gave the trial court power to deny intervention. Therefore, there was not an absolute statutory right to intervention. The court then addressed delay as one reason why the intervention was properly denied. The court stated that the evidence showed that the intervenors were guilty of an "unreasonable delay and laches in asserting their claims." *Id.* at 555, 195 P.2d at 561. The court then stated: " 'Aside from the statutory limitation upon the time of intervention, it is the general rule that a right to intervene should be asserted within a reasonable time and that the interven[o]r must not be guilty of an unreasonable delay after knowledge of the suit.' . . ." *Id.* 555-56, 195 P.2d at 561. See, also, *Amer States Ins Co, supra* (holding that laches or unreasonable delay is proper reason to deny intervention).

Douglas argues that an unreasonable delay rule does not apply because we have previously stated that when intervention is sought before trial, the intervenor is not required to set forth reasons why he or she did not intervene at an earlier time. See *Pribil v. French,* 179 Neb. 602, 139 N.W.2d 356 (1966). We disagree. In *Pribil,* the court was not presented with the issue whether laches could apply because of an unreasonable delay.

Instead, it was an action brought before trial with no delay involved. Accordingly, *Pribil* is not applicable.

■ We agree with the California and Michigan courts which have held that under equity principles, laches, or unreasonable delay, is a proper reason to deny intervention. Like the California statute at issue in *In re Yokohama Specie Bank*, § 25-328 provides that a person "may" intervene. To intervene, a party must file a complaint, and the court can deny intervention. § 25-330. Therefore, although the statute uses the title of intervention of "right," it does not provide for an "absolute right" to intervene.

■ Under equitable principles, courts of equity have inherent power to refuse relief after an inexcusable delay when not to do so would work an injustice. *Van Pelt v. Greathouse*, 219 Neb. 478, 364 N.W.2d 14 (1985). What constitutes laches depends on the circumstances of the case. *Id.* Laches, however, does not result from the mere passage of time, but because during the lapse of time, circumstances changed such that to enforce the claim would work inequitably to the disadvantage or prejudice of another. *Id.*

In the petition to intervene, Douglas, a shareholder in Salem, alleged that he had been a shareholder during all relevant times and was appointed by the corporation in 1986 to act as its agent to negotiate the purchase of stock from the bank. During that time is when Seeba allegedly breached a duty to the corporation by purchasing the stock. So, from the beginning, Douglas was aware of Salem's claim against Seeba. He did not, however, seek to intervene while Nelson was alive, nor did he seek to revive the action after Nelson's death. Instead, he waited 10 years to revive the dormant action by filing a intervention complaint.

Moreover, because the action was treated as dismissed and was not revived after Nelson's death, Seeba could justifiably believe that the action was final; the statute of limitations for a new action for divestiture and an accounting had also run. Therefore, allowing the claim to be revived through intervention would prejudice Seeba. We affirm.

AFFIRMED.