Cleaver-Brooks, Inc., appellee, v. Twin City
Fire Insurance Company, a subsidiary
of The Hartford Insurance Company,
appellant, and American Insurance
Company et al., appellees.

___ N.W.2d ___

Filed July 2, 2015.    No. S-14-822.

1. **Summary Judgment: Appeal and Error.** An appellate court will affirm a lower court's grant of summary judgment if the pleadings and admitted evidence show that there is no genuine issue as to any material facts or as to the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law.

2. ____: ____. In reviewing a summary judgment, the court views the evidence in the light most favorable to the party against whom the judgment was granted and gives such party the benefit of all reasonable inferences deducible from the evidence.

3. **Judgments: Estoppel: Appeal and Error.** An appellate court reviews a court's application of judicial estoppel to the facts of a case for abuse of discretion and reviews its underlying factual findings for clear error.

4. **Workers' Compensation: Appeal and Error.** In light of the beneficent purpose of the Nebraska Workers' Compensation Act, the appellate courts give the act a liberal construction to carry out justly the spirit of the act.

5. **Workers' Compensation.** Delay, cost, and uncertainty are contrary to the underlying purposes of the Nebraska Workers' Compensation Act.

6. **Workers' Compensation: Legislature: Intent: Employer and Employee: Time.** The Nebraska Workers' Compensation Act was intended by the Legislature to simplify legal proceedings and to bring about a speedy settlement of disputes between the injured employee and the employer by taking the place of expensive court actions with tedious delays and technicalities.

7. **Equity: Estoppel.** Judicial estoppel is an equitable doctrine that a court invokes at its discretion to protect the integrity of the judicial process.

8. **Estoppel.** The doctrine of judicial estoppel protects the integrity of the judicial process by preventing a party from taking a position inconsistent with one successfully and unequivocally asserted by the same party in a prior proceeding.

9. ____. Judicial estoppel prevents parties from gaining an advantage by taking one position in a proceeding and then switching to a different position when convenient in a later proceeding.

10. ____. Judicial estoppel is to be applied with caution so as to avoid impinging on the truth-seeking function of the court, because the doctrine precludes a contradictory position without examining the truth of either statement.

11. **Laches.** The defense of laches is not favored in Nebraska.

12. ____. Laches occurs only if a litigant has been guilty of inexcusable neglect in enforcing a right and his or her adversary has suffered prejudice.

13. **Laches: Equity.** Laches does not result from the mere passage of time, but because during the lapse of time, circumstances changed such that to enforce the claim would work inequitably to the disadvantage or prejudice of another.

14. **Laches.** What constitutes laches depends on the circumstances of the case.

15. **Negligence.** For actionable negligence to exist, there must be a legal duty on the part of the defendant to protect the plaintiff from injury, a failure to discharge that duty, and damage proximately resulting from such undischarged duty.

16. ____. Whether a legal duty exists for actionable negligence is a question of law dependent on the facts in a particular case.

17. ____. Absent a duty, a negligence claim fails.

18. **Negligence: Insurance: Claims.** When a claim arises, an insurer generally owes a duty to the insured to exercise reasonable care in defending the suit.

Appeal from the District Court for Douglas County: Gary B. Randall, Judge. Affirmed.

Andrew T. Schlosser, of Fitzgerald, Schorr, Barmettler & Brennan, P.C., L.L.O., for appellant.

Terry R. Wittler, of Cline, Williams, Wright, Johnson & Oldfather, L.L.P., for appellees SSW, Inc., formerly known as National Dynamics Corporation, et al.

J. Scott Paul, of McGrath, North, Mullin & Kratz, P.C., L.L.O., for appellee American Insurance Company.

Tiernan T. Siems and Andrew M. Collins, of Erickson & Sederstrom, P.C., for appellee Cleaver-Brooks, Inc.

Heavican, C.J., Connolly, McCormack, Miller-Lerman, and Cassel, JJ.

Heavican, C.J.

## I. NATURE OF CASE

James E. Risor, an employee at a boiler manufacturing plant in Lincoln, Nebraska, sustained permanent hearing loss as a result of his employment. Between the time Risor was injured and the time he filed his workers' compensation claim, the plant changed ownership. Counsel representing the new owner's insurer, American Insurance Company (American), mistakenly believed American had insured the plant during the time of the injury. Twin City Fire Insurance Company (Twin City), which insured the plant for the previous owner, was not given notice of the claim until after entry of an award.

The new owner of the plant filed a declaratory judgment action against the previous owner and both insurers to determine who is liable for payment of the award. The district court determined that Twin City was liable. Twin City appeals. We find the district court correctly determined that Twin City was liable for the award and hence affirm.

## II. BACKGROUND

The parties have entered into a stipulation, so the facts are not in dispute by any party.

### 1. Risor's Injuries

Risor began working at a boiler manufacturing plant, colloquially referred to as "Nebraska Boiler," in Lincoln in 1973, and remained continuously employed at the plant until his retirement in 2004. During the course of Risor's employment, he suffered permanent hearing loss in both ears. Risor filed a claim against Nebraska Boiler in the Nebraska Workers' Compensation Court on January 20, 2004.

### 2. Nebraska Boiler

The plant has been owned by several different entities from 1973 to the present, although a company with the exact legal name of "Nebraska Boiler" has never owned the plant. In 1976, Daniel T. Scully, Roger L. Swanson, and Verlyn L. Westra purchased the plant and incorporated it as Nebraska Boiler Company, Inc. In 1989, Nebraska Boiler Company, Inc., merged with National Dynamics Corporation (National Dynamics), and after the merger, Nebraska Boiler Company, Inc., ceased to exist. Scully, Swanson, and Westra were shareholders of National Dynamics.

In 1998, Aqua-Chem, Inc., purchased various assets of National Dynamics, including the boiler manufacturing plant. Pursuant to the purchase agreement, National Dynamics agreed to indemnify Aqua-Chem for any liabilities not assumed by Aqua-Chem. No workers' compensation claims by Risor were mentioned in the agreement. After the sale, National Dynamics changed its name to SSW, Inc., and subsequently dissolved in 2003. The assets of the corporation were distributed to its three shareholders: Scully, Swanson, and Westra. In 2006, Aqua-Chem changed its name to Cleaver-Brooks, Inc. Cleaver-Brooks is the current legal owner of the boiler manufacturing plant.

### 3. Insurance Coverage

Several companies have provided workers' compensation insurance coverage to the boiler manufacturing plant over the years.

At the time of the sale to Cleaver-Brooks, National Dynamics entered into an agreement with Twin City to provide workers' compensation insurance coverage to National Dynamics for claims made by employees working at the boiler manufacturing plant from 1992 to 1998.

Cleaver-Brooks contracted with Fireman's Fund Insurance Company, later renamed American, to provide workers' compensation insurance coverage from 1992 to 2002. The coverage did not extend back to claims arising from the boiler manufacturing plant before Cleaver-Brooks acquired it in 1998.

Liberty Mutual Group, Inc., provided workers' compensation insurance coverage to Cleaver-Brooks from 2002 through Risor's trial. Liberty Mutual is not a party to this action.

### 4. PROCEDURAL HISTORY

Nebraska Boiler was the only named defendant in Risor's workers' compensation claim. The compensation court provided only Cleaver-Brooks with notice of the claim. Neither National Dynamics nor any of the insurance companies were given notice by the court. After Cleaver-Brooks tendered the claim to its two insurance providers, each insurance company retained separate counsel to defend Cleaver-Brooks against Risor's claims. During the course of the litigation, counsel for American operated under the mistaken belief that American had provided workers' compensation insurance coverage to Nebraska Boiler from 1992 to 2002. Instead, American had actually provided workers' compensation insurance coverage to only Cleaver-Brooks and not to National Dymanics, which actually owned Nebraska Boiler when Risor was injured. Counsel for American represented this mistaken belief to the compensation court.

On April 26, 2006, a single judge of the compensation court determined that Risor was permanently and totally disabled as a result of the hearing loss. The judge determined the date of the accident to be October 19, 1993. The date of the injury was apparently a surprise to both Risor and the defendants.

In his complaint, Risor alleged that he had suffered injuries only as early as 2001. Despite the determination of October 19, 1993, as the date of the accident causing the hearing loss, the judge ordered payment from Nebraska Boiler to begin as of the date of Risor's retirement, February 12, 2004.

After the filing of this order, an adjuster for American realized that Cleaver-Brooks did not own the plant on the date of Risor's injury; therefore, American was not the plant's insurer at the time of the injury. Nebraska Boiler filed a motion for continuance in order to allow "'additional parties who may have an exposure to liability once a final determination has been made' be served and given an opportunity to present additional evidence to the court."[1] The judge denied the motion for continuance. Both Risor and Cleaver-Brooks appealed to a review panel of the compensation court.

Twin City was given notice of the claim against Nebraska Boiler on August 1, 2006, and on October 25, Twin City filed a motion for leave to intervene to participate as a party in the appeal to the review panel. The review panel denied Twin City's motion, and Twin City appealed that decision to this court in *Risor v. Nebraska Boiler* (*Risor I*).[2] In 2008, we determined that "Twin City did not have a right to postaward intervention in Risor's workers' compensation action brought solely against his employer, Nebraska Boiler."[3] In reaching this conclusion, we noted that American "believed . . . that it was Nebraska Boiler's insurer during the period in which the court ultimately determined Risor was injured" and that "the evidence is that Nebraska Boiler's interests, represented by attorneys provided by [American], were substantially the same as Twin City's."[4] Twin City, however, was "free to represent the interests of its insured, Nebraska Boiler, in [Risor's

---

[1] *Risor v. Nebraska Boiler*, 274 Neb. 906, 908, 744 N.W.2d 693, 696 (2008).

[2] *Id.*

[3] *Id.* at 910, 744 N.W.2d at 697.

[4] *Id.* at 915, 744 N.W.2d at 700.

subsequent] appeal of the award to the review panel, if it so chooses."[5] Twin City did not participate in that appeal.

In Risor's separate appeal of the award to the review panel, Risor argued that the appropriate date for commencing payments was the date of the injury in 1993, rather than the date Risor retired in 2004. In May 2008, the review panel reversed the single judge's decision and determined that payment should start from the date Risor was permanently injured in 1993. Nebraska Boiler appealed that decision to this court in *Risor v. Nebraska Boiler* (*Risor II*).[6] We affirmed the review panel's decision in 2009.[7]

In November 2012, Cleaver-Brooks filed this action for declaratory judgment in the district court for Douglas County to determine which party or parties were liable for Risor's claim. The named defendants were Twin City; American; SSW, Inc.; and Scully, Swanson, and Westra in their individual capacities. All parties filed motions for summary judgment. On June 21, 2013, the district court issued an order finding that Twin City was solely liable for the award. The district court determined that Twin City insured the plant at the time of Risor's injury and also found that the doctrines of laches and judicial estoppel did not apply and were not a defense to liability for Twin City. Further, the district court dismissed Twin City's counterclaims and cross-claims against Cleaver-Brooks and American for negligence, equitable subrogation, indemnification, contribution, and unjust enrichment. Finally, the district court held that the individual shareholders had no liability for the award, but did not address the claims by SSW, Inc.

Twin City appealed to this court, but the appeal was dismissed on the ground that the order from the district court was not a final order because it did not address the claims

---

[5] *Id.* at 916, 744 N.W.2d at 700.

[6] *Risor v. Nebraska Boiler*, 277 Neb. 679, 765 N.W.2d 170 (2009).

[7] *Id.*

by SSW, Inc. On August 13, 2014, the district court issued a supplemental order which incorporated its previous order and disposed of any remaining claims related to SSW, Inc. Twin City now properly appeals from a final order.

## III. ASSIGNMENTS OF ERROR

Twin City assigns, consolidated and restated, that the district court erred in (1) finding that Twin City was solely liable for payment of the workers' compensation award; (2) applying *Risor I* to the merits of a subsequent contribution or indemnity claim; (3) finding that the delay by Cleaver-Brooks in giving notice to Twin City and in asserting that Risor was not its employee prior to 1998 was not inexcusable; (4) finding that judicial estoppel did not prevent the district court from finding that Twin City was solely liable for payment of the claim; and (5) finding that other parties to the suit did not breach their duty to exercise reasonable care with respect to Twin City.

## IV. STANDARD OF REVIEW

[1,2] An appellate court will affirm a lower court's grant of summary judgment if the pleadings and admitted evidence show that there is no genuine issue as to any material facts or as to the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law.[8] In reviewing a summary judgment, the court views the evidence in the light most favorable to the party against whom the judgment was granted and gives such party the benefit of all reasonable inferences deducible from the evidence.[9]

[3] An appellate court reviews a court's application of judicial estoppel to the facts of a case for abuse of discretion and reviews its underlying factual findings for clear error.[10]

---

[8] *DMK Biodiesel v. McCoy*, 290 Neb. 287, 859 N.W.2d 867 (2015).

[9] *Id.*

[10] *TFF, Inc. v. SID No. 59*, 280 Neb. 767, 790 N.W.2d 427 (2010).

## V. ANALYSIS

### 1. LIABILITY FOR AWARD

Twin City assigns that the district court erred in determining Twin City was solely liable for payment of the workers' compensation award. Twin City's argument hinges on the facts that Risor brought suit against Nebraska Boiler, which was owned by Cleaver-Brooks at the time Risor filed his complaint, and that the dates of the injuries Risor alleged in his complaint all occurred when Cleaver-Brooks owned the plant. Twin City argues that this indicates Risor's intent to file a claim only against Cleaver-Brooks.

In *Risor I*, we referred to Cleaver-Brooks as Nebraska Boiler's "parent company."[11] The use of the term "parent company," which suggests Cleaver-Brooks owned a controlling interest in a separate corporation, is not an accurate description of that relationship. Nebraska Boiler was in fact merely a trade name used by both National Dynamics and Cleaver-Brooks to refer to the plant. The transaction between National Dynamics and Cleaver-Brooks, which resulted in the transfer of ownership of the plant, was an asset sale and not a stock purchase. At the time Risor filed his complaint, Cleaver-Brooks owned the plant outright as an asset and not as a subsidiary.

That being said, we still correctly recognized in *Risor I* that Twin City could potentially face liability for the award. In *Risor I*, we held that Twin City was not deprived of its right to procedural due process when the review panel denied Twin City's motion to intervene in the proceedings.[12] We classified Twin City as being "in privity" with Nebraska Boiler, noting "Nebraska Boiler's interests [in defending the suit] were substantially the same as Twin City's."[13] This holding, at the very least, suggests Twin City could potentially be liable for an award entered against Nebraska Boiler by the

---

[11] *Risor I, supra* note 1, 274 Neb. at 909, 744 N.W.2d at 696.

[12] *Risor I, supra* note 1.

[13] *Id.* at 914-15, 744 N.W.2d at 700.

compensation court. The fact that Nebraska Boiler is not a separate legal subsidiary does not change this.

[4-6] We note the purpose of the Nebraska Workers' Compensation Act and the flexibility with which we have interpreted the act: "In light of [the] beneficent purpose of the [Nebraska Workers' Compensation Act, the appellate courts] have consistently given the act a liberal construction to '"'"carry out justly the spirit of the [a]ct.'"'"[14] "Delay, cost, and uncertainty are contrary to the underlying purposes of the [Nebraska Workers' Compensation] Act."[15] "The [Nebraska Workers' Compensation] Act was intended by the Legislature to simplify legal proceedings and to bring about a speedy settlement of disputes between the injured employee and the employer by taking the place of expensive court actions with tedious delays and technicalities."[16]

From Risor's perspective, he worked at the same plant (Nebraska Boiler) for his entire career, even though ownership of the plant changed several times over the course of his employment. Although filing a complaint against Nebraska Boiler was not technically accurate, Risor's intent was clear: to receive compensation for the injury incurred during his employment at the plant, regardless of who owned the plant at the time he suffered his injury.

The compensation court found that Risor's injury occurred in 1993, which holding was affirmed by this court in *Risor II*.[17] Further, it is undisputed that Twin City, through its policy with National Dynamics, was the sole provider of coverage for workers' compensation claims for employees working at the plant during that time period. Therefore, Twin City is liable

---

[14] *Jackson v. Morris Communications Corp.*, 265 Neb. 423, 431, 657 N.W.2d 634, 640 (2003).

[15] *Estate of Teague v. Crossroads Co-op Assn.*, 286 Neb. 1, 10, 834 N.W.2d 236, 245 (2013).

[16] *Id.*

[17] *Risor II, supra* note 6.

for the award and cannot elude payment by relying on a technical inaccuracy, the designation of General Dynamics, rather than Nebraska Boiler, as the employer in Risor's claim. The district court did not err in finding that Twin City was liable for the award.

Twin City's assignment of error is without merit.

## 2. Twin City's Equitable Defenses

Twin City assigns that the district court erred in finding that it was liable for the award because the doctrine of judicial estoppel precluded Cleaver-Brooks from claiming Twin City was responsible and because Cleaver-Brooks' claim was barred by the doctrine of laches.

### (a) Judicial Estoppel

Twin City argues that because Cleaver-Brooks, through the attorney retained by American, represented to the compensation court that American's coverage of the plant started in 1992, the doctrine of judicial estoppel now prevents Cleaver-Brooks and American from asserting an inconsistent position in this proceeding.

[7-9] Judicial estoppel is an equitable doctrine that a court invokes at its discretion to protect the integrity of the judicial process.[18] The doctrine of judicial estoppel protects the integrity of the judicial process by preventing a party from taking a position inconsistent with one successfully and unequivocally asserted by the same party in a prior proceeding.[19] Fundamentally, the intent behind the doctrine of judicial estoppel is to prevent parties from gaining an advantage by taking one position in a proceeding and then switching to a different position when convenient in a later proceeding.[20]

---

[18] *TFF, Inc., supra* note 10.

[19] *Burns v. Nielsen*, 273 Neb. 724, 732 N.W.2d 640 (2007).

[20] See, e.g., *MW Erectors v. Niederhauser Ornamental*, 36 Cal. 4th 412, 115 P.3d 41, 30 Cal. Rptr. 3d 755 (2005).

Some have described the purpose of the rule as "to prevent parties from playing fast and loose with the courts."[21]

[10] This doctrine, however, is to be applied with caution so as to avoid impinging on the truth-seeking function of the court, because the doctrine precludes a contradictory position without examining the truth of either statement.[22] Many courts require a showing of bad faith before the doctrine is invoked and will not apply the doctrine in the case of mistake or negligence.[23] We agree with these jurisdictions that bad faith or an actual intent to mislead on the part of the party asserting inconsistent positions must be demonstrated before the judicial estoppel doctrine may be invoked. Although the judicial admission doctrine is not applicable here,[24] we note we have held that for a judicial admission to substitute as evidence the admission "'must be unequivocal, deliberate, and clear, and not the product of mistake or inadvertence.'"[25]

In this case, we find no evidence of any bad faith or an intent to mislead on the part of either Cleaver-Brooks or American. In fact, it was in neither Cleaver-Brooks' nor American's interest to initially represent to the compensation court that Cleaver-Brooks owned the plant or that American's policy covered the plant in 1993. At the time American's attorney made the misrepresentation, all parties involved believed

---

[21] *Ryan Operations G.P. v. Santiam-Midwest Lumber Co.*, 81 F.3d 355, 361 (3d Cir. 1996).

[22] *Jardine v. McVey*, 276 Neb. 1023, 759 N.W.2d 690 (2009).

[23] See, e.g., *New Hampshire v. Maine*, 532 U.S. 742, 121 S. Ct. 1808, 149 L. Ed. 2d 968 (2001); *King v. Herbert J. Thomas Memorial Hosp.*, 159 F.3d 192 (4th Cir. 1998); *In re Chambers Development Co., Inc.*, 148 F.3d 214 (3d Cir. 1998); *Johnson v. State of Oregon*, 141 F.3d 1361 (9th Cir. 1998); *Haley v. Dow Lewis Motors, Inc.*, 72 Cal. App. 4th 497, 85 Cal. Rptr. 2d 352 (1999); *Arkison v. Ethan Allen, Inc.*, 160 Wash. 2d 535, 160 P.3d 13 (2007).

[24] See *Marting v. Nebraska Liquor Control Comm.*, 250 Neb. 134, 548 N.W.2d 326 (1996).

[25] *Prime Home Care v. Pathways to Compassion*, 283 Neb. 77, 93, 809 N.W.2d 751, 764-65 (2012).

that the earliest possible date of Risor's injury was 2001—3 years after the plant was sold. It was only after the compensation court determined the date of the injury to actually be 1993 that the attorney's inaccurate statement gained any significance. Further, American's attorney sought to correct the information once the mistake was uncovered. There is no reason to believe that Cleaver-Brooks or American intentionally misrepresented the facts in order to mislead or gain some type of advantage.

The district court did not abuse its discretion in rejecting this defense.

### (b) Laches

[11-14] Twin City argues that recovery against Twin City should be barred by the doctrine of laches, because Cleaver-Brooks unjustifiably delayed notifying Twin City of the claim by Risor. The defense of laches is not favored in Nebraska.[26] Laches occurs only if a litigant has been guilty of inexcusable neglect in enforcing a right and his or her adversary has suffered prejudice.[27] Laches does not result from the mere passage of time, but because during the lapse of time, circumstances changed such that to enforce the claim would work inequitably to the disadvantage or prejudice of another.[28] What constitutes laches depends on the circumstances of the case.[29] In other words, Twin City must prove that any delay in notification by Cleaver-Brooks and American was inexcusable and that Twin City was prejudiced by that delay.

Because the original dates of the alleged injuries in Risor's claim were all while Cleaver-Brooks owned the company, Cleaver-Brooks or American had no reason to notify Twin City until the compensation court determined the date of the injury

---

[26] *Schellhorn v. Schmieding*, 288 Neb. 647, 851 N.W.2d 67 (2014).

[27] *Farmington Woods Homeowners Assn. v. Wolf*, 284 Neb. 280, 817 N.W.2d 758 (2012).

[28] *Merz v. Seeba*, 271 Neb. 117, 710 N.W.2d 91 (2006).

[29] *Id.*

to be in 1993. The facts indicate that the trial court entered its award on April 26, 2006, and Twin City was notified of the claim on August 1. Between those two dates the following occurred in the case: Risor appealed the award on May 9, Nebraska Boiler filed a cross-appeal on May 10, and Nebraska Boiler's motion for a continuance was denied on May 10. We find nothing in the stipulated facts suggesting any delay was inexcusable.

Even if Cleaver-Brooks had some reason to know before the trial court entered its award that there was a potential claim for which Twin City could be liable, the evidence still does not establish that Twin City was prejudiced by any delay. American "vigorously defended against Risor's claim"[30] and the outcome likely would not have differed had Twin City participated. Further, *Risor I* specifically granted Twin City the chance to participate in the appeal of the award to the review panel, but Twin City chose not to participate. To the extent that Twin City may have been prejudiced at all, Twin City's own inaction undeniably contributed to that prejudice. The court did not abuse its discretion in rejecting this defense.

Twin City's assignments of error are without merit.

### 3. TWIN CITY'S COUNTERCLAIM/ CROSS-CLAIM: NEGLIGENCE

[15] Twin City assigns that the district court erred in dismissing Twin City's counterclaim and cross-claim that alleged Cleaver-Brooks and American negligently injured Twin City when they both failed to notify Twin City of the pending claim. For actionable negligence to exist, there must be a legal duty on the part of the defendant to protect the plaintiff from injury, a failure to discharge that duty, and damage proximately resulting from such undischarged duty.[31]

---

[30] *Risor I, supra* note 1, 274 Neb. at 915, 744 N.W.2d at 700.

[31] *Brown v. Social Settlement Assn.*, 259 Neb. 390, 610 N.W.2d 9 (2000).

### (a) Duty

[16-18] We must determine whether Cleaver-Brooks or American owed a duty to Twin City in this situation. Whether a legal duty exists for actionable negligence is a question of law dependent on the facts in a particular case.[32] Absent a duty, a negligence claim fails.[33] When a claim arises, an insurer generally owes a duty to the insured to exercise reasonable care in defending the suit.[34] But Twin City cites to no case law in Nebraska, or any other jurisdiction, which has found that one insurance company owes a duty to notify another insurance company of potential claims. There also appears to be no case law that suggests Cleaver-Brooks, having purchased the plant as an asset, would owe a duty to notify Twin City of such claims. Given the facts of this case, when presented with a workers' compensation claim alleging injuries that occurred no earlier than 2001, Cleaver-Brooks and American could not have reasonably been expected to notify Twin City, an insurer which covered claims arising from the plant only between 1992 and 1998. As a matter of law, we find Cleaver-Brooks and American had no duty to notify Twin City.

### (b) Breach

Further, there is no evidence that either Cleaver-Brooks or American breached any duty of care owed to Twin City if such a duty were to exist. In this case, the parties only had reason to believe that Twin City could potentially be exposed to liability after a single judge from the compensation court determined, to the surprise of all the parties, the date of the injury to be in 1993. Twin City was informed within a reasonable period of time after that judgment. The evidence established that Cleaver-Brooks and American acted reasonably

---

[32] *Perez v. Stern*, 279 Neb. 187, 777 N.W.2d 545 (2010).

[33] *Ashby v. State*, 279 Neb. 509, 779 N.W.2d 343 (2010).

[34] See, e.g., *Kelly v. Iowa Mut. Ins. Co.*, 620 N.W.2d 637 (Iowa 2000).

in protecting any interests Twin City had in the claim.[35] The district court did not err in dismissing Twin City's negligence claims.

### 4. TWIN CITY'S REMAINING COUNTERCLAIMS/ CROSS-CLAIMS: EQUITABLE SUBROGATION, INDEMNIFICATION, CONTRIBUTION, AND UNJUST ENRICHMENT

Pursuant to Neb. Rev. Stat. § 48-125 (Cum. Supp. 2014), the amount of a workers' compensation award is increased by 50 percent if payment is not made to the claimant within 30 days of entry of the award. In order to avoid the statutory penalty, Twin City paid the lump-sum award due to Risor and has been making monthly payments to Risor since that time.

All of Twin City's remaining assignments of error essentially allege the same thing under slightly different legal theories: Twin City was wrongfully forced to pay the award to Risor and either Cleaver-Brooks or American should compensate Twin City for all or part of what Twin City has already paid to Risor. These arguments necessarily fail, because we have found that Twin City, as the insurer of the plant at the time Risor was injured, is liable for payment of the award. Twin City's remaining assignments of error are without merit.

### VI. CONCLUSION

The district court did not err in determining Twin City was liable for Risor's workers' compensation award, in rejecting Twin City's equitable defenses, and in dismissing Twin City's counterclaims.

AFFIRMED.

STEPHAN, J., participating on briefs.
WRIGHT, J., not participating.

---

[35] See *Risor I, supra* note 1.