PAR 3, INC., A NEBRASKA CORPORATION, APPELLANT, v. DAN LIVINGSTON, APPELLEE.
CORNHUSKER NURSERY, INC., A NEBRASKA CORPORATION, APPELLANT, v. DAN LIVINGSTON, APPELLEE.

686 N.W.2d 369

Filed September 10, 2004.    Nos. S-03-494, S-03-495.

Eric W. Kruger and Ryan M. Sewell, of Rickerson, Kruger & Ratz, L.L.C., for appellants.

Martin P. Pelster and John M. Prososki, of Croker, Huck, Kasher, DeWitt, Anderson & Gonderinger, L.L.C., for appellee.

HENDRY, C.J., CONNOLLY, GERRARD, STEPHAN, MCCORMACK, and MILLER-LERMAN, JJ.

PER CURIAM.

## NATURE OF CASE

The appellants, Par 3, Inc., and Cornhusker Nursery, Inc. (Cornhusker), each brought suit against Dan Livingston for breach of contract. The actions were subsequently consolidated for trial. The Douglas County District Court found that Livingston was not personally liable for breach of the contract and, accordingly, dismissed Par 3's and Cornhusker's petitions.

## FACTS

In April 1995, Livingston and an associate organized a corporation called Castle Development, Inc. Livingston acted as president of Castle Development. One of the corporation's proposed projects was a real estate and golf course development tentatively called Castle Brook. At all relevant times, Par 3 was in the business of selling and transplanting trees and Cornhusker was in the business of growing trees.

On April 30, 1996, a contract was entered into whereby an entity referred to as "Castlebrook" was to purchase a number of trees from Par 3 for a total price of $300,000. These trees were to be supplied by Cornhusker and transported by Par 3 to the development site. "Castlebrook" was to pay Par 3 the sum of $150,000 by no later than August 15. The contract was signed by the treasurer of Par 3, the president of Cornhusker, and Livingston. The words "TITLE/CASTLEBROOK" were typed below Livingston's signature. Above the word "TITLE," Livingston wrote "Pres."

The Castle Brook project never came to fruition, and Par 3 did not receive any portion of the purchase price set forth in the contract. In separate petitions, Par 3 and Cornhusker filed suit against Livingston for breach of contract. The corporations sought recovery of lost profits and damages, after mitigation, for unsold trees. In his answers, Livingston alleged that he was not personally liable on the contract because he executed the document in his capacity as president of Castle Development. The cases were consolidated for trial.

After a bench trial, the district court dismissed Par 3's and Cornhusker's petitions. The court found that Livingston intended to and did sign the contract as president of Castle Development, not in his personal capacity. In addition, the court found there was no evidence that any of the parties to the contract intended to sign the contract as individuals or to incur personal liability.

Par 3 and Cornhusker filed timely motions for new trial. The motions were overruled, and these appeals followed.

## ASSIGNMENTS OF ERROR

Par 3 and Cornhusker assign the following restated errors: (1) the court's determination that Livingston was not personally liable for breach of the contract, (2) the court's reforming of the contract at issue, (3) the court's use of extrinsic and parol evidence to add to and vary the terms of a clear and unambiguous contract, and (4) the court's entry of judgment for Livingston and its overruling of their motions for new trial.

## STANDARD OF REVIEW

■ A suit for damages arising from breach of a contract presents an action at law. *Anderson Excavating v. SID No. 177*, 265 Neb. 61, 654 N.W.2d 376 (2002).

■ In a bench trial of a law action, the trial court's factual findings have the effect of a jury verdict and will not be disturbed on appeal unless clearly wrong. *Id.*

■ A motion for new trial is addressed to the discretion of the trial court, whose decision will be upheld in the absence of an abuse of that discretion. *Carlson v. Okerstrom*, 267 Neb. 397, 675 N.W.2d 89 (2004).

■ A judicial abuse of discretion exists when a judge, within the effective limits of authorized judicial power, elects to act or

refrain from acting, but the selected option results in a decision which is untenable and unfairly deprives a litigant of a substantial right or a just result in matters submitted for disposition through a judicial system. *Id.*

## ANALYSIS

### LIVINGSTON'S PERSONAL LIABILITY ON CONTRACT

Most of the issues involved in this appeal arise from the question of whether Livingston can be held personally liable for breach of the April 30, 1996, contract. Accordingly, we will address this issue first.

The appellants argue that Livingston's actions fall under Neb. Rev. Stat. § 21-2020 (Reissue 1997), which states that "[a]ll persons purporting to act as or on behalf of a corporation, knowing there was no incorporation under the Business Corporation Act, shall be jointly and severally liable for all liabilities created while so acting." Their argument is based upon the fact that the contract at issue was signed by Livingston as the president of Castle Brook. However, Livingston testified at trial that Castle Brook was never incorporated in Nebraska.

Livingston argues that he intended to enter into the contract as the president of Castle Development, not Castle Brook. At trial, he testified that at the time he signed the contract, he was unaware that the name of the entity was incorrect on the document.

The district court found that Livingston did not intend to enter into the contract in a personal capacity. In support of its finding, the court noted that there was a place for each person signing the contract to list their title within the corporation they were representing. In the court's opinion, this indicated that each of the signors was acting as an officer of their respective corporations and not personally. Also, the court noted that Livingston testified that he signed the contract as president of Castle Development. Further, Dean Jenson, the president of both Par 3 and Cornhusker, testified that he believed he was dealing with a corporation when he entered into the contract.

We conclude the district court's finding that Livingston did not sign the contract in his personal capacity is not clearly wrong. The issue then becomes whether Livingston signed the contract on behalf of Castle Brook or Castle Development.

Jenson's testimony on this subject is somewhat contradictory. He admitted he believed that the contract was entered into by a corporation, but he also stated he was unaware that Livingston was working for a corporation which was in existence at the time the contract was executed.

On the other hand, Livingston presented evidence which demonstrates that the appellants were aware they were entering into a contract with Castle Development, an existing corporation. The initial meetings giving rise to the contract at issue involved Jenson, Livingston, and the other shareholder of Castle Development. In addition, shortly after the contract was signed, Cornhusker issued a $25,000 check made payable to Livingston. The check was part of the overall deal associated with the contract. Before accepting the check, Livingston had Jenson add the words "Castle Dev." to his name on the check. This check was deposited into a bank account held by Castle Development. Also, months before the contract was signed, Jenson requested a letter of recommendation from Livingston. In response, Livingston wrote a letter, dated December 13, 1995, which was prepared on Castle Development letterhead. The opening line of the letter stated: "We at Castle Development . . . ." The letter was signed "Dan Livingston, President."

A suit for damages arising from breach of a contract presents an action at law. *Anderson Excavating v. SID No. 177*, 265 Neb. 61, 654 N.W.2d 376 (2002). In a bench trial of a law action, the trial court's factual findings have the effect of a jury verdict and will not be disturbed on appeal unless clearly wrong. *Id.*

The district court concluded that Livingston intended to and did sign the contract as president of Castle Development, and not in his personal capacity. Further, it found that there was no evidence presented which would show that the parties who entered into the contract did so with the intention of incurring personal liability. Based upon the evidence adduced at trial, we cannot state that these findings were clearly wrong. Since the court was not clearly wrong in finding that Livingston was contracting as an agent for a corporation that was in existence when the contract was executed, § 21-2020 is not applicable to the case at bar. For these reasons, we find the appellants' first assignment of error to lack merit.

## DISTRICT COURT'S INTERPRETATION OF CONTRACT

■ The appellants argue that the district court erred in reforming the contract at issue. A court may reform an agreement when there has been either a mutual mistake or a unilateral mistake caused by fraud or inequitable conduct on the part of the party against whom reformation is sought. *Twin Towers Dev. v. Butternut Apartments*, 257 Neb. 511, 599 N.W.2d 839 (1999).

A review of the district court's order, however, reveals that the court did not reform the contract. Instead, the court considered the evidence presented at trial in order to determine whether Livingston was personally liable on the contract. The court's finding that Livingston was not personally liable was not based upon any alleged mistake in the contract, but was instead premised on the conclusion that none of the parties involved in the contract intended to incur personal liability. We conclude that the district court did not reform the contract and that the appellants' second assignment of error is without merit.

■ The appellants' third assignment of error asserts that the district court used extrinsic and parol evidence to add to and vary the terms of a clear and unambiguous contract. The parol evidence rule renders ineffective proof of a prior or contemporaneous oral agreement which alters, varies, or contradicts the terms of a written agreement. *Sack Bros. v. Tri-Valley Co-op*, 260 Neb. 312, 616 N.W.2d 786 (2000).

Our review of the district court's order reveals that the court did not add to and vary the terms of the contract. Instead, the court made a factual determination that Livingston did not intend to be held personally liable on the contract. This determination was made independent of any of the terms of the contract and was based upon the evidence adduced at trial concerning the intent of the parties. Accordingly, we find the appellants' third assignment of error to be without merit.

## APPELLANTS' MOTIONS FOR NEW TRIAL

The appellants' final assignment of error concerns the district court's overruling of their motions for new trial. A motion for new trial is addressed to the discretion of the trial court, whose decision will be upheld in the absence of an abuse of that discretion. *Carlson v. Okerstrom*, 267 Neb. 397, 675 N.W.2d 89 (2004). A

judicial abuse of discretion exists when a judge, within the effective limits of authorized judicial power, elects to act or refrain from acting, but the selected option results in a decision which is untenable and unfairly deprives a litigant of a substantial right or a just result in matters submitted for disposition through a judicial system. *Id.*

In the district court's order overruling the appellants' motions for new trial, the court reiterated its finding that the parties involved in the contract were aware that they were not dealing with each other in their personal capacities. The court restated its finding that Livingston was acting at all relevant times as the representative of a corporation. Since we hold that these findings were not clearly wrong, we find that the district court did not abuse its discretion in overruling the appellants' motions.

## CONCLUSION

For the reasons stated above, we affirm the decision of the district court which found that Livingston was not personally liable for breach of the contract and which dismissed the appellants' petitions.

AFFIRMED.

WRIGHT, J., participating on briefs.