Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
06/28/2016 08:10 AM CDT

Wahoo Locker, LLC, appellant, v.
Farm Bureau Property and Casualty
Insurance Company, appellee.

___ N.W.2d ___

Filed June 28, 2016.    No. A-15-435.

1. **Contracts: Reformation: Equity.** An action to reform a contract sounds in equity.
2. **Equity: Appeal and Error.** In an appeal of an equitable action, an appellate court tries factual questions de novo on the record, provided that where credible evidence is in conflict on a material issue of fact, the appellate court considers and may give weight to the fact that the trial judge heard and observed the witnesses and accepted one version of the facts rather than another.
3. **Reformation: Intent.** Reformation may be granted to correct an erroneous instrument to express the true intent of the parties to the instrument.
4. ____: ____. The right to reformation depends on whether the instrument to be reformed reflects the intent of the parties.
5. **Reformation: Presumptions: Intent: Evidence.** To overcome the presumption that an agreement correctly expresses the parties' intent and therefore should be reformed, the party seeking reformation must offer clear, convincing, and satisfactory evidence.
6. **Evidence: Words and Phrases.** Clear and convincing evidence means that amount of evidence which produces in the trier of fact a firm belief or conviction about the existence of the fact to be proved.
7. **Reformation: Fraud.** A court may reform an agreement when there has been either a mutual mistake or a unilateral mistake caused by fraud or inequitable conduct on the part of the party against whom reformation is sought.
8. **Reformation: Intent: Words and Phrases.** A mutual mistake is a belief shared by the parties, which is not in accord with the facts. A mutual mistake is one common to both parties in reference to the instrument to

- 145 -

DECISIONS OF THE NEBRASKA COURT OF APPEALS
24 NEBRASKA APPELLATE REPORTS
WAHOO LOCKER v. FARM BUREAU PROP. & CAS. INS. CO.
Cite as 24 Neb. App. 144

be reformed, each party laboring under the same misconception about their instrument. A mutual mistake exists where there has been a meeting of the minds of the parties and an agreement actually entered into, but the agreement in its written form does not express what was really intended by the parties.

9. **Contracts: Reformation.** The fact that one of the parties to a contract denies that a mistake was made does not prevent a finding of mutual mistake or prevent reformation.

10. **Insurance: Contracts.** The reasonable expectations of an insured are not assessed unless the language of the insurance policy is found to be ambiguous.

Appeal from the District Court for Saunders County: MARY C. GILBRIDE, Judge. Affirmed.

Dean F. Suing and Milton A. Katskee, of Katskee, Suing & Maxell, P.C., L.L.O., for appellant.

Gary J. Nedved, of Keating, O'Gara, Nedved & Peter, P.C., L.L.O., for appellee.

PIRTLE and RIEDMANN, Judges.

PER CURIAM.

## INTRODUCTION

Wahoo Locker, LLC, sought reformation of an insurance policy issued by Farm Bureau Property and Casualty Insurance Company (Farm Bureau) providing replacement coverage for the Wahoo Locker building in Wahoo, Nebraska. The district court for Saunders County found that Wahoo Locker was entitled to coverage as set forth in the policy and that Wahoo Locker was not entitled to reformation based upon a mutual mistake regarding the terms of the policy. Wahoo Locker appeals the order of the district court, and for the reasons that follow, we affirm.

## BACKGROUND

In 1997, Charlie Emswiler bought Wahoo Locker, a meat processing facility, for approximately $75,000 to $85,000.

- 146 -

Decisions of the Nebraska Court of Appeals
24 Nebraska Appellate Reports
WAHOO LOCKER v. FARM BUREAU PROP. & CAS. INS. CO.
Cite as 24 Neb. App. 144

In 2009, Emswiler and his wife were the sole owners of Wahoo Locker. Through the years, the Emswilers purchased several insurance policies on behalf of Wahoo Locker. Wahoo Locker was insured by Iowa Mutual Insurance Company (Iowa Mutual) from 2006 until June 14, 2009. Wahoo Locker was insured by Midwest Family Mutual Insurance Company (Midwest Family Mutual) from June 14 to September 14, 2009.

On September 14, 2009, Farm Bureau issued a policy insuring Wahoo Locker for $491,000. The policy was renewed annually, and the limit of insurance did not change from year to year. The policy was in effect on May 8, 2013, the day of a grease fire which caused catastrophic loss to the Wahoo Locker building. At the time of the fire, the Emswilers were the majority owners of the business. The insurance policy in effect on that day contained the following provisions:

**4. Loss Payment**

a. In the event of loss or damage covered by this Coverage Form, at [Farm Bureau's] option, [Farm Bureau] will either:

(1) Pay the value of lost or damaged property;

(2) Pay the cost of repairing or replacing the lost or damaged property, subject to b. below;

(3) Take all or any part of the property at an agreed or appraised value; or

(4) Repair, rebuild or replace the property with other property of like kind and quality, subject to b. below.

We will determine the value of lost or damaged property, or the cost of its repair or replacement, in accordance with the applicable terms of the Valuation Condition in this Coverage Form or any applicable provision which amends or supersedes the Valuation Condition.

b. The cost to repair, rebuild or replace does not include the increased cost attributable to enforcement of any ordinance or law regulating the construction, use or repair of any property.

On September 6, 2013, Wahoo Locker filed a complaint in equity alleging the Emswilers, as agents of Wahoo Locker, reasonably relied on representations of Farm Bureau's soliciting agents that their insurance policy would cover the "full replacement cost" for the damage caused to property insured by Farm Bureau. Wahoo Locker alleged Farm Bureau breached its contract by failing to pay the full replacement cost of the building, an amount greater than the insurance policy limit of $491,000. The replacement cost allegedly exceeded $950,000. Wahoo Locker alleged that "Farm Bureau breached [the implied contractual covenants] of good faith and fair dealing and violated the Nebraska Uniform Insurance Claim Practices Act and acted in bad faith." Wahoo Locker sought a judgment against Farm Bureau for (1) damages for breach of its insurance contract; (2) reformation of the insurance contract to provide full replacement cost coverage; (3) damages for "breach of Farm Bureau's duty of good faith and fair dealing, violation of the Nebraska Unfair Claim Practices Settlement Act, and damages allowable for acting in bad faith in investigating and resolving this claim"; (4) attorney fees; and (5) any other allowable relief under contract, tort, or applicable Nebraska law.

Trial was held in the district court for Saunders County on November 5 and 6, 2014.

The parties stipulated that Dirk Westercamp was hired by Farm Bureau to render an opinion regarding the fair and reasonable cost to repair, rebuild, or replace the building with other property of like kind and quality so that the building would be the same as it was immediately prior to the fire. They stipulated that Westercamp concluded the fair and reasonable cost would be $490,632. They further stipulated that Westercamp's statement did not offer an opinion as to whether repairing, rebuilding, or replacing the building with other property of like kind and quality would have permitted the structure to be compliant with the regulations of the U.S. Department of

- 148 -

DECISIONS OF THE NEBRASKA COURT OF APPEALS
24 NEBRASKA APPELLATE REPORTS
WAHOO LOCKER v. FARM BUREAU PROP. & CAS. INS. CO.
Cite as 24 Neb. App. 144

Agriculture (USDA) in order to operate as a locker plant, as it had prior to the fire.

Gerald Beller is a general contractor who works on projects, including locker plants and distribution, cold storage, and meat processing facilities. Beller testified that Wahoo Locker was regulated by the USDA and was given a custom exempt privilege to operate as a meat processing facility prior to May 8, 2013. He testified that if the damaged facility were to be repaired, it would not be able to operate as a meat processing facility because it was primarily composed of wood, which is no longer approved by the USDA. Plans for a new facility were submitted for review and approval by the USDA.

Beller was asked to calculate the cost of replacing the damaged locker plant, and his findings were included in the stipulation. Beller concluded that in order for the locker plant to be compliant with the USDA regulations, it required "ground up construction with new and different materials and property as the locker plant could not be repaired, rebuilt or replaced with other property of like kind and quality and be compliant with the [USDA] regulations in 2013." Beller's report stated that his opinion of the fair and reasonable replacement cost was $983,438. This estimate was based on a completely new building with modern materials and equipment that would comply with the 2013 USDA standards. Beller concluded that at the time the policy went into effect in 2009, the fair and reasonable cost to replace the Wahoo Locker with new and different materials and property to be USDA compliant would have been $767,998, excluding the value of the processing equipment.

Lonny Neiwohner is an agent for Scribner Insurance Agency, and he testified by deposition regarding Wahoo Locker's insurance history. In a letter dated July 27, 2006, Neiwohner recommended changes to Wahoo Locker's coverage through Iowa Mutual. The letter noted the insurance company recommended increasing coverage to $370,000 for replacement

- 149 -

DECISIONS OF THE NEBRASKA COURT OF APPEALS
24 NEBRASKA APPELLATE REPORTS
WAHOO LOCKER v. FARM BUREAU PROP. & CAS. INS. CO.
Cite as 24 Neb. App. 144

cost, or $156,000 for actual cash value. At that time, Wahoo Locker was insured for actual cash value coverage of $79,000. Emswiler declined replacement cost coverage, but increased the actual cash value coverage of the building from $79,000 to $100,000. Emswiler signed a cancellation request dated May 18, 2009, terminating Iowa Mutual's coverage, effective June 14, 2009. At that time, Emswiler told Neiwohner that he canceled the policy because he could obtain replacement cost coverage from Midwest Family Mutual for a lower premium than the Iowa Mutual policy, which provided coverage only for actual cash value.

Cole Williams is an agent with Insurance Associates, Inc., in Norfolk, Nebraska, and he issued a policy for Wahoo Locker through Midwest Family Mutual. Williams also testified by deposition. Emswiler met with Williams in April 2009, and Williams obtained the necessary information to estimate the replacement cost for the building through the Marshall & Swift/Boeckh computer system (Marshall system). The Marshall system was used because it is the standard for replacement cost estimates in the insurance industry. The commercial building valuation report which Williams obtained through the Marshall system indicated a replacement cost valuation of $490,943 for Wahoo Locker on April 22, 2009.

Williams prepared a spreadsheet for Emswiler showing that at the time, Wahoo Locker was insured for a building value of $100,000 by Iowa Mutual, and that for a premium increase of $831, Wahoo Locker could be insured by Midwest Family Mutual for a building value of up to $490,943. Emswiler elected to obtain coverage through Midwest Family Mutual, effective June 14, 2009. On September 14, 2009, Emswiler signed a cancellation request terminating the Midwest Family Mutual policy. Williams called Emswiler to find out why he intended to cancel his coverage, and he was told Emswiler switched to Farm Bureau to "pay less premium for the same amount of coverage."

- 150 -

Decisions of the Nebraska Court of Appeals
24 Nebraska Appellate Reports
WAHOO LOCKER v. FARM BUREAU PROP. & CAS. INS. CO.
Cite as 24 Neb. App. 144

The evidence reveals that on May 7, 2009, Kyle Cooper, a local Farm Bureau agent, and Lisa Miller, a property casualty consultant for Farm Bureau, met with Emswiler. As set out above, at the time of this initial meeting, Wahoo Locker was insured by Iowa Mutual under an actual cash value policy with a limit of $100,000. Miller and Cooper suggested that Emswiler obtain replacement cost coverage for Wahoo Locker. Cooper was tasked with making a determination of what level of insurance was necessary to provide replacement cost coverage to rebuild and operate as a meat processing facility in case of a catastrophic loss.

Emswiler testified that he relied on Cooper to make a determination of the full replacement cost and believed that whatever amount Cooper insured the building for would be sufficient to rebuild and operate as a meat processing facility in case of a catastrophic loss. He testified that the existing plant was a USDA inspected plant. After the fire, the damaged locker plant could not be repaired because the USDA would not license it. Emswiler was told by an adjustor for Farm Bureau that the company would pay only $491,000, although the replacement cost would be in excess of $982,000. Emswiler testified that he did not look at the coverage limits on the building that his insurance premiums were based upon. He did not discuss the replacement cost figure with Cooper, and Cooper did not tell him that the coverage was restricted, or less than the cost of replacing the Wahoo Locker building as a meat processing facility. Emswiler said Cooper did not deny that it was his duty as an agent to determine the replacement cost value and to be certain that the business was adequately covered in the event of a catastrophic loss.

Cooper testified that he knew the Emswilers would rely on him to determine what level of coverage was necessary to rebuild and have an operating meat processing facility in the event of a catastrophic loss. Prior to 2009, Cooper had not worked with or written a policy for a meat processing facility. Cooper testified that it was his intention to have sufficient

- 151 -

Decisions of the Nebraska Court of Appeals
24 Nebraska Appellate Reports
WAHOO LOCKER v. FARM BUREAU PROP. & CAS. INS. CO.
Cite as 24 Neb. App. 144

coverage in place to provide the full replacement cost in the event of a catastrophic loss. He testified that the Marshall system produced a form indicating the replacement cost for Wahoo Locker in 2009 was $509,527 and that the building was insured for $491,000. The Farm Bureau policy went into effect on September 14, 2009.

Cooper testified there was no agreement between Farm Bureau and Wahoo Locker to insure the building for anything other than the $491,000 provided in the policy. He said that replacement cost coverage is a more expensive policy than actual value coverage. He defined replacement cost coverage as "coverage on your insurance policy to rebuild or replace your property with like kind materials and, you know, as it is, basically." He said replacement coverage is intended for the insured to be "whole" again, without out-of-pocket expenditures. He testified that it was his routine practice to represent to clients that replacement cost coverage was the amount to replace the building "as it stood with materials of like kind and quality" up to the policy limits. Cooper defined actual cash value coverage as the depreciated value of the building at the time of the loss.

Cooper said the building was not intentionally underinsured, and he was surprised that the cost to rebuild was almost double the policy limit. He testified that when renewing the policy, he did not recalculate replacement cost to confirm that the coverage limits were adequate, taking into account inflation or increased construction costs.

Miller testified that at the first meeting with a potential insured, agents obtain information about a business, including declarations pages which are a starting point used in the calculation of potential coverage. She said that at the initial meeting, the agent does not know whether Farm Bureau will insure the business; that determination is made by the commercial underwriting department. Miller said that replacement cost coverage is determined by inspecting the building, determining the square footage, and obtaining other pertinent

- 152 -

Decisions of the Nebraska Court of Appeals
24 Nebraska Appellate Reports
WAHOO LOCKER v. FARM BUREAU PROP. & CAS. INS. CO.
Cite as 24 Neb. App. 144

information, then inputting the information into the Marshall system. She stated the replacement cost coverage obtained through the Marshall system is used to determine the premium to be charged to insure a building. She testified that there is no way to obtain a premium for coverage without a limit and that there is no way to issue a policy without a limit on replacement coverage.

A commercial underwriter for Farm Bureau testified that her duties included reviewing applications for insurance that are sent to her by agents and giving approval or permission to notify a potential client regarding whether Farm Bureau will assume their risk. To help determine risk, underwriters ask about liability, existing hazards, experience, and loss history. She testified that Wahoo Locker required a special kind of rate to help generate a premium, as it was a type of risk that was "generally ineligible." She consulted the "insurance services office" Web site and found the rates at Cooper's request, and she requested further information from Cooper to determine whether Farm Bureau would accept the risk. She gave Cooper the authority to bind Farm Bureau on June 18, 2009. At that time, she was not aware that Cooper did not use the form generated by the Marshall system to calculate the estimated replacement cost for Wahoo Locker. She canceled Wahoo Locker's fire coverage in December 2009, because she had not received supporting documentation from Cooper, including the Marshall system form and pictures of the Wahoo Locker building. The policy was reinstated later.

John Hruska was called as an expert for Wahoo Locker on the issue of insurance risk management. He testified that in an operation like Wahoo Locker, reconstruction would have additional considerations such as compliance with the "ADA . . . , city ordinances [and] other authorities." He recommended discussing these issues with the client and speaking to an architect or contractor in addition to obtaining an appraisal through the Marshall system. He explained that an inflation guard endorsement is designed to increase the

- 153 -

Decisions of the Nebraska Court of Appeals
24 Nebraska Appellate Reports
WAHOO LOCKER v. FARM BUREAU PROP. & CAS. INS. CO.
Cite as 24 Neb. App. 144

property values on an insurance policy each year, to protect the client if the insurance agent does nothing to adjust the value of the property from year to year. The Farm Bureau policy had an inflation guard endorsement available but it was not utilized.

Following the bench trial, the district court found that there was no mutual mistake with regard to the policy limits and that the limit for replacement cost was $491,000. The court further found that the "[i]ncreased costs to replace the building to standards imposed by code [were] not recoverable under the express terms of the policy." The court found that the cost to replace the building as it existed prior to the fire was $490,632 and that Wahoo Locker was entitled to judgment in that amount. The issue of "bad faith" was still at issue at that time. Wahoo Locker moved to dismiss the second cause of action for bad faith, and the district court dismissed the claim, without prejudice, at Wahoo Locker's cost.

## ASSIGNMENTS OF ERROR

Wahoo Locker asserts, summarized and restated, that the trial court erred in finding there was no mutual mistake or unilateral mistake regarding the terms and conditions of the Farm Bureau policy. Wahoo Locker asserts the trial court erred in finding there was no basis upon which to provide recovery in an amount which would permit Wahoo Locker to rebuild and continue to operate as a meat processing facility.

## STANDARD OF REVIEW

[1,2] An action to reform a contract sounds in equity. *R & B Farms v. Cedar Valley Acres*, 281 Neb. 706, 798 N.W.2d 121 (2011). In an appeal of an equitable action, an appellate court tries factual questions de novo on the record, provided that where credible evidence is in conflict on a material issue of fact, the appellate court considers and may give weight to the fact that the trial judge heard and observed the witnesses and accepted one version of the facts rather than another.

- 154 -

Decisions of the Nebraska Court of Appeals
24 Nebraska Appellate Reports
WAHOO LOCKER v. FARM BUREAU PROP. & CAS. INS. CO.
Cite as 24 Neb. App. 144

*Id.* See, also, *Ficke v. Wolken*, 291 Neb. 482, 868 N.W.2d 305 (2015).

## ANALYSIS

*Policy Not Subject to Reformation.*

[3-6] Reformation may be granted to correct an erroneous instrument to express the true intent of the parties to the instrument. *R & B Farms v. Cedar Valley Acres, supra.* The right to reformation depends on whether the instrument to be reformed reflects the intent of the parties. *Id.* To overcome the presumption that an agreement correctly expresses the parties' intent and therefore should be reformed, the party seeking reformation must offer clear, convincing, and satisfactory evidence. Clear and convincing evidence means that amount of evidence which produces in the trier of fact a firm belief or conviction about the existence of the fact to be proved. *Id.*

[7] The Nebraska Supreme Court has held that a court may reform an agreement when there has been either a mutual mistake or a unilateral mistake caused by fraud or inequitable conduct on the part of the party against whom reformation is sought. *Par 3, Inc. v. Livingston*, 268 Neb. 636, 686 N.W.2d 369 (2004).

Wahoo Locker asserts the district court erred in finding there was no mutual or unilateral mistake upon the issuance of the policy which is the subject of this action. Wahoo Locker argues that the policy issued does not reflect the real agreement between the parties, because Farm Bureau's agent represented that the policy would provide full replacement cost coverage assuring "the reconstruction of Wahoo Locker's plant in the event of a catastrophic loss." Brief for appellant at 18.

[8] Wahoo Locker asserts the district court erred in finding there was not sufficient evidence that a mutual mistake occurred. A mutual mistake is

"""a belief shared by the parties, which is not in accord with the facts. . . . A mutual mistake is one common to

- 155 -

DECISIONS OF THE NEBRASKA COURT OF APPEALS
24 NEBRASKA APPELLATE REPORTS
WAHOO LOCKER v. FARM BUREAU PROP. & CAS. INS. CO.
Cite as 24 Neb. App. 144

both parties in reference to the instrument to be reformed, each party laboring under the same misconception about their instrument. . . . 'A mutual mistake exists where there has been a meeting of the minds of the parties and an agreement actually entered into, but the agreement in its written form does not express what was really intended by the parties.'"""

*R & B Farms v. Cedar Valley Acres*, 281 Neb. 706, 715, 798 N.W.2d 121, 129 (2011).

[9] The fact that one of the parties to a contract denies that a mistake was made does not prevent a finding of mutual mistake or prevent reformation. *Id.* However, upon our de novo review, we find there is not clear and convincing evidence of a mutual mistake in this case which would justify reformation of the insurance contract.

The evidence shows that in May 2009, Cooper and Miller met with Emswiler and recommended replacement cost coverage for the Wahoo Locker building. Wahoo Locker asserts that Cooper represented to Emswiler that "'replacement cost'" was cost incurred in "constructing a building, utility equivalent using modern materials, current standards, design, and layout." Brief for appellant at 31. Emswiler understood this to include any improvements or upgrades that may be required to meet the current USDA regulations. However, Cooper testified at trial that replacement coverage "is to rebuild the property like it is, like it stands." Cooper further testified that he explained this definition to Emswiler during their discussions before the policy was issued. Therefore, the evidence is not clear, convincing, or satisfactory that at the time Cooper sold the policy to Wahoo Locker, he was under the mistaken belief that replacement cost coverage would include improvements or upgrades that may be required to meet the current USDA regulations. Nor is there clear, convincing, or satisfactory evidence that Cooper ever told Emswiler that coverage would include the cost of reconstructing a facility with modern materials in accordance with current building standards.

- 156 -

DECISIONS OF THE NEBRASKA COURT OF APPEALS
24 NEBRASKA APPELLATE REPORTS
WAHOO LOCKER v. FARM BUREAU PROP. & CAS. INS. CO.
Cite as 24 Neb. App. 144

While the term "replacement cost" may have held a different meaning to Emswiler, there was no mutual mistake as to the coverage provided.

We find this case akin to *Ridenour v. Farm Bureau Ins. Co.*, 221 Neb. 353, 377 N.W.2d 101 (1985). In *Ridenour*, the insureds sought to reform their insurance policy on the basis of mutual mistake. They claimed that they had requested coverage on their hogs and hog confinement building to protect them in the event of a collapse. The policy issued, however, excluded loss caused by collapse. The insureds testified that the agent assured them that the hogs and building would be covered in the event of collapse. The agent, however, testified that they had not requested such coverage and that, in fact, he knew the insurer did not provide collapse coverage for outbuildings. Given the conflicting testimony, the court refused to reform the policy, concluding that "[a]ny mistake which may have existed was therefore one made only by plaintiff." *Id*. at 359, 377 N.W.2d at 105.

In the present case, there is no dispute that Emswiler requested replacement coverage for Wahoo Locker; however, the evidence is in conflict on what that term was represented to mean. Given Cooper's testimony that he knew replacement coverage was limited to costs incurred to replace the building as it stood before the loss and his testimony that he would have conveyed that to Emswiler before he sold the policy, any mistake which may have existed as to its meaning was therefore one made only by Emswiler. Therefore, there was no mutual mistake upon which reformation may be granted.

A policy may also be reformed when there has been a unilateral mistake caused by fraud or inequitable conduct on the part of the party against whom reformation is sought. *Twin Towers Dev. v. Butternut Apartments*, 257 Neb. 511, 599 N.W.2d 839 (1999). Although the district court's order does not specifically address this issue, we determine that the lower court implicitly found no unilateral mistake given its refusal to reform the contract, and we find no error in that decision.

- 157 -

Decisions of the Nebraska Court of Appeals
24 Nebraska Appellate Reports
WAHOO LOCKER v. FARM BUREAU PROP. & CAS. INS. CO.
Cite as 24 Neb. App. 144

Cooper testified he was surprised that the cost to replace the locker plant was nearly double what he had insured the property for and that he never had any intent to underinsure the building. This evidence does not support a finding of fraud or inequitable conduct.

Based upon the above, we find no error in the district court's refusal to reform the policy.

*Recovery Limited to Policy Limits.*

Wahoo Locker argues that the trial court erred in finding that there was no basis to provide Wahoo Locker a recovery beyond the stated policy limits. It argues that based upon the representations of Cooper and the reasonable expectations of Wahoo Locker, coverage in excess of the policy limits should be provided. We disagree.

The parties stipulated that Westercamp concluded the fair and reasonable cost to repair, rebuild, or replace the building with other property of like kind and quality so that the building owned by Wahoo Locker would be the same as it was immediately before the fire was $490,632. The evidence also shows that the Wahoo Locker building could not be rebuilt "as it stood with materials of like kind and quality" and still operate as a meat processing facility, due to changes in the USDA regulations.

The parties also stipulated that Beller determined the fair and reasonable cost of replacing the Wahoo Locker building with new and different materials which would be compliant with the USDA regulations at both the inception of the policy in 2009 and the time of the fire in 2013.

Wahoo Locker asserts that Cooper represented to Emswiler that replacement cost was being provided; however, by limiting the amount of recovery to the costs incurred to rebuild the locker plant with materials of like kind and quality is to provide "reproduction cost" and not "replacement cost." Brief for appellant at 30. The policy, itself, defines the extent of Farm Bureau's liability. It specifically states that

in the event of a loss covered by the policy, Farm Bureau would either:

(1) Pay the value of lost or damaged property;

(2) Pay the cost of repairing or replacing the lost or damaged property, subject to b. below;

(3) Take all or any part of the property at an agreed or appraised value; or

(4) Repair, rebuild or replace the property with other property of like kind and quality, subject to b. below.

. . . .

b. The cost to repair, rebuild or replace does not include the increased cost attributable to enforcement of any ordinance or law regulating the construction, use or repair of any property.

The extent of Farm Bureau's coverage is specifically defined in the policy provision set forth above, and according to Cooper, he advised Emswiler that replacement coverage is to rebuild the property as it stands. We therefore reject Wahoo Locker's argument that Cooper's representations were contrary to the terms of the policy.

[10] In support of its position that its reasonable expectations were not met, Wahoo Locker refers to out-of-state cases in which policy exclusions were not applied and the increased costs to repair or rebuild the covered property were awarded. See *Bering Strait School Dist. v. RLI Ins.*, 873 P.2d 1292 (Alaska 1994), and *Dupre v. Allstate Ins. Co.*, 62 P.3d 1024 (Colo. App. 2002). Under Nebraska law, however, the reasonable expectations of an insured are not assessed unless the language of the insurance policy is found to be ambiguous. *Cincinnati Ins. Co. v. Becker Warehouse, Inc.*, 262 Neb. 746, 635 N.W.2d 112 (2001). Neither Wahoo Locker nor Farm Bureau contend the policy provision is ambiguous. In another case relied upon by Wahoo Locker, *U.S.D. No. 285 v. St. Paul Fire and Marine Ins. Co.*, 6 Kan. App. 2d 244, 627 P.2d 1147 (1981), *overruled on other grounds, Thomas v. American Family Mut. Ins. Co.*, 233 Kan. 775, 666 P.2d 676 (1983), the

- 159 -

Decisions of the Nebraska Court of Appeals
24 Nebraska Appellate Reports
WAHOO LOCKER v. FARM BUREAU PROP. & CAS. INS. CO.
Cite as 24 Neb. App. 144

court held that the insurer could be held liable up to the limits of coverage. Here, Wahoo Locker seeks to recover beyond the policy limits.

Having reviewed the evidence, we agree with the district court that Wahoo Locker is not entitled to a recovery beyond the stated policy limits in the present action.

## CONCLUSION

For the foregoing reasons, we find the district court did not err in refusing to reform the policy and in limiting Wahoo Locker's recovery to the policy limits of $491,000.

AFFIRMED.

Bishop, Judge, participating on briefs.